UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA      :
                              :   4:CR-04-0119
       v.                     :
                              :
CHRISTY LEE NUGENT            :   (Judge Muir)


**ORDER**

May 2, 2005

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

A significant portion of this order's background is set
forth in our orders of February 16, 2005, and March 25, 2005.  We
repeat and supplement the backgrounds of those orders here only
to the extent necessary to rule on a "Supplemental Objection to
Her Offense Level Based on This Honorable Court's Order of March
25, 2005," which Defendant Christy Lee Nugent filed March 30,
2005.  A supporting brief was filed with the supplemental
objection.  The government filed its opposition brief on April
13, 2005.  Nugent filed a reply brief on April 27, 2005, thereby
ripening her supplemental objection for disposition.  Before
considering the merits of the objection we will review the
relevant procedural and factual history of this case.

On March 25, 2004, a federal grand jury returned an eight-
count indictment charging Defendant Christy Lee Nugent with four
counts of mail fraud and four counts of fraud by wire, radio, or
television.  On April 27, 2004, Nugent pled guilty to the charges

contained in counts three and four of the indictment, each of which charged her with mail fraud in violation of 18 U.S.C. § 1341, and aiding and abetting in such an offense in violation of 18 U.S.C. § 2.  The two charges of mail fraud to which Nugent has pled guilty relate to two checks sent to Nugent via Federal Express.  The checks were sent in the course of Nugent's scheme to defraud families by falsely representing that she could arrange for the adoption by them of newborn babies.

United States Probation Officer Eric W. Noll determined Nugent's Total Offense Level to be 12, her Criminal History Category to be VI, and her Guideline Imprisonment Range to be 30 to 37 months.  The Probation Officer's determinations were based on his conclusions that 1) a two-level upward adjustment was warranted pursuant to United States Sentencing Guideline § 3A1.1(b)(1) because some of the individuals defrauded by Nugent were vulnerable victims, and 2) the total amount of the intended loss was more than $30,000 but not more than $70,000.

Although she initially objected to a large number of paragraphs in her presentence report, Nugent ultimately withdrew all of her objections except those relating to the upward adjustment based on the allegedly vulnerable victims and the amount of restitution to be paid.  In our order of February 16, 2005, we sustained Nugent's two objections to her presentence report and we provided the parties an opportunity to brief the

2

issue of whether an upward departure should be imposed because, as stated by Probation Officer Noll in paragraph 79 of the presentence report, some of Nugent's acts "appeared to inflict additional punishment on the prospective new parents (victims)." (Presentence Report, ¶79)

On March 25, 2005, we issued an order in which we concluded that certain actions taken by Nugent after she received the checks at issue in counts three and four of the indictment (such as requiring the adopting families to travel to Texas to pick up their babies and taking those families shopping for baby items, when Nugent knew that no such children existed) constituted extreme conduct which justified a three-level upward departure pursuant to United States Sentencing Guideline § 5K2.8.

In the supplemental objection Nugent filed on March 30, 2005, she contends that her Total Offense Level should be adjusted downwards by three levels because, based on certain statements in our order of March 25, 2005, some of the facts used to determine her Total Offense Level are not sufficiently relevant to be considered in sentencing her.  As noted above the total of the losses incurred by all of the victims was used to calculate Nugent's Total Offense Level.  That loss figure, as set forth in the presentence report, includes the expenses incurred by the families to travel to Texas.

Nugent now argues that the loss attributed to her should not

include those travel costs because, based upon the statements she cites in our March 25, 2005, order, those costs occurred after Nugent had fulfilled all of the elements of her crimes and the costs are therefore not within the scope of the "relevant conduct" to be considered in sentencing Nugent.  If the victims' travel costs are deducted form the loss attributable to Nugent, her Total Offense Level would be reduced by three levels.  Having set forth the material background, we turn to the merits of Nugent's supplemental objection.

With respect to the governing legal standard, Nugent acknowledges that we may rely on all "relevant conduct" in sentencing her.  United States Sentencing Guideline § 1B1.3 is entitled "Relevant Conduct (Factors that Determine the Guideline Range)," and it defines the phrase "relevant conduct" as follows:

> all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ... that occurred during the commission of the offense of conviction, ... or in the course of attempting to avoid detection or responsibility for that offense; and ... all acts and omissions described ... above that were part of the same course of conduct or common scheme or plan as the offense of conviction.

U.S.S.G. §§ 1B1.3(a)(1)(A), (a)(2).

As a threshold matter we emphasize the extremely limited foundation upon which Nugent has grounded her supplemental objection.  Instead of being based upon or incorporating an expansive view of the factual record, Nugent relies exclusively on a small number of sentences and phrases carved out of the

4

March 25, 2005, order.  For the reasons detailed below, the text
she quotes does not support the position Nugent advances in her
supplemental objection.

Our order of March 25, 2005, addressed the issue of whether
Nugent's conduct was sufficiently extreme to justify an upward
departure pursuant to United States Sentencing Guideline § 5K2.8,
entitled "Extreme Conduct."  The conclusion we reached in that
order was based on our observation that the elements of mail
fraud in this case were fulfilled when the two checks described
in counts three and four had been sent to Nugent.  Nugent's
supplemental objection is based on the following text she quotes
from our order of March 25, 2005:

> [The elements of a violation of 18 U.S.C. § 1341] were met,
> and Nugent's mail fraud completed, when [the two checks at
> issue in counts three and four] were sent in the mail. ...
>                    .     .     .
>    In determining whether an upward departure is appropriate
> for extreme conduct, we focus our attention on the
> gratuitous acts performed by Nugent after the mail fraud had
> been completed.  In our experience we have never handled a
> mail fraud case in which the perpetrator of the fraud
> required his or her victims to take such substantial actions
> after the elements of the crime had been fulfilled.

(Order of March 25, 2005, pp. 9-10)(Emphasis added)  At first
blush, the underscored portions quoted above could conceivably be
interpreted to support Nugent's argument.  However, a fair
reading of those quotations in the context of the entire
discussion regarding the propriety of departing upwards for
Nugent's extreme conduct erodes the basis of Nugent's

supplemental objection.

The legal principles governing our consideration of the upward departure considered in the order of March 25, 2005, required us to compare Nugent's mail fraud case to other mail fraud cases. *See* United States v. Paster, 173 F.3d 206, 217 (3d Cir. 1999)(upward departure for extreme conduct in second degree murder case should be based upon comparison with other second degree murder cases); Order of March 25, 2005, p. 8 ("... because the offenses in Nugent's case are two counts of mail fraud, our consideration of whether Nugent's actions constitute extreme conduct will be based in large measure upon a comparison with other mail fraud cases.")

In comparing Nugent's mail fraud case to other mail fraud cases we stated the following:

> In our view it is extremely significant that, if Nugent had <u>not</u> required her victims to travel to Texas, the same mail fraud offenses would have been committed and the same sentencing guideline would have been applied to determine her base offense level.
> ... [W]e have never handled a mail fraud case in which the perpetrator of the fraud required his or her victims to take such substantial actions after the elements of the crime had been fulfilled.
> <u>It is undisputed that Nugent's offense conduct extended far beyond the receipt of checks and other money.</u>  Nugent inexplicably and unnecessarily prolonged her victims' false hopes of adoption by requiring them to travel to Texas to pick up their children.  In addition Nugent drove the families to stores to buy items necessary to care for a baby.  Nugent's fraud was not revealed to the families until she disappeared shortly thereafter.  When the full scope of the fraud was revealed to them, the families were hundreds of miles from their homes, friends, and families, and were required to endure a return trip to Pennsylvania with

crushed hopes of adoption.

(Order of March 25, 2005, pp. 10-11)(Emphasis in first sentence
in original; emphasis in third sentence added)  In her
supplemental objection Nugent completely fails to address, or
even acknowledge in any manner, those portions of the March 25,
2005, order.

There is a critical distinction to be drawn between the
point at which the technical elements of an offense may be
fulfilled and the point at which an actual defendant completes
the criminal conduct relating to his or her offense.  As we
stated in our order of March 25, 2005, "[i]t is undisputed that
Nugent's offense conduct extended far beyond the receipt of
checks and other money." (Id.)  Nugent has not made any attempt
to challenge the facts asserted in that statement and a fair
review of the entire record confirms the statement's validity.
Although Nugent had fulfilled the elements of mail fraud when the
checks were sent to her, she decided to continue the offense
conduct by carrying on her fraudulent scheme.

The statute defining the offense to which Nugent pled guilty
covers "any scheme or artifice." 18 U.S.C. § 1341.  Nugent's
"scheme or artifice" consisted of her representations that she
could arrange for the adoption of children.  Nugent required her
victims to travel to Texas in the course of executing her "scheme
or artifice."  We further agree with the government's assertion

7

that the trips to Texas could be construed as an attempt to avoid detection or responsibility for the fraud.  As we stated in our order of March 25, 2005, "Nugent's fraud was not revealed to the families until she disappeared shortly" after the shopping trips in Texas. (Order of March 25, 2005, p. 10)

In our view, Nugent's requirement that the victims travel to Texas, and her conduct while the victims were in Texas, constitute

> acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ... that occurred during the commission of the offense of conviction ... or in the course of attempting to avoid detection or responsibility for that offense; and ... were part of the same course of conduct or common scheme or plan as the offense of conviction.

U.S.S.G. §§ 1B1.3(a)(1)(A), (a)(2).  Those actions lie within the scope of the relevant conduct that we may consider in sentencing Nugent.  Consequently, the victims' expenditures stemming from those actions were properly considered in determining Nugent's Total Offense Level.

We will overrule Nugent's supplemental objection.

NOW, THEREFORE, IT IS ORDERED THAT:

1.   Nugent's supplemental objection is overruled.

2.   Nugent's sentence will be imposed via teleconference as

per the parties' agreement on May 23, 2005, at 4:00
p.m.

s/Malcolm Muir
MUIR, U.S. District Judge

MM:ga